**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

GREGORY L. WILSON,

      Plaintiff,

*v.*                              CASE NO. 08-CV-11751

COMMISSIONER OF               DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]


**I.**      **RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the

Commissioner's determination that Plaintiff is not disabled.    Accordingly, **IT IS**

**RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's

Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 12.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 6 at 14, 52.) Plaintiff's relevant employment history includes work as an inventory stock person at a grocery store for one year and an assembler for an automobile manufacturer for 13 years. (Tr. at 83.) Plaintiff last worked in 1991. (*Id.*)

The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 23.) Plaintiff filed the instant claim on January 10, 2005, alleging that he became unable to work on November 16, 1992.[2] (Tr. at 55.) The claim was denied at the initial administrative stages. (Tr. at 36.) In denying Plaintiff's claims, the Defendant Commissioner considered heart failure and obesity as possible bases of disability. (*Id.*)

On January 23, 2007, Plaintiff appeared before ALJ Michael E. Wilenkin, who considered the instant application for benefits *de novo*. In a decision dated April 13, 2007, the ALJ found that Plaintiff was not disabled at any time prior to the expiration of his eligibility for benefits. (Tr. at 11-23.) Plaintiff requested a review of this decision on April 18, 2007. (Tr. at 8.)

---

[2]In his decision on this claim, the ALJ noted that Plaintiff had filed two prior applications for benefits: one in June 1992, which was denied after a hearing and affirmed by the Appeals Council (Tr. at 14), and another in January 2002, which was denied at the initial administrative stages and not appealed. (Tr. at 35, 52-54.) Applying the doctrine of administrative *res judicata*, the ALJ refused to reopen either of these applications. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on February 27, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On April 25, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

B.      **Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course

for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.     **Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was hospitalized at Sinai Hospital in December after

experiencing shortness of breath while shoveling snow. (Tr. at 180). Plaintiff recounted a history of congestive heart failure, with shortness of breath, but without chest pain, swelling, sweating or cough. (*Id.*) While hospitalized, Plaintiff underwent a right and left heart catheterization, left ventriculography and coronary angiography in December of 1996 by Dr. Mark Rasak. (Tr. at 201-02.) Dr. Rasak's report indicated that there was "no significant coronary artery disease," but he found "severe global systolic left ventricular dysfunction" and "adequate cardiac output at rest." (Tr. at 202.) Chest x-rays revealed that the "lungs and pleural spaces are clear" and a lung scan revealed "low probability study for pulmonary embolism." (Tr. at 204-05, 224.) A venous evaluation of the lower extremities showed "no evidence of any echogenic material within any of the interrogated veins and the vein walls were readily brought into coaptation at all levels." (Tr. at 213.) An echocardiogram showed that Plaintiff's "left ventricular ejection fraction is moderately to severely reduced" and "concentric left ventricular hypertrophy." (Tr. at 216.) Plaintiff also showed signs of a "large inferior perfusion defect which may be partially reversible." (Tr. at 221.)

Plaintiff was also diagnosed with sleep apnea. (Tr. at 197-200, 209.) After being treated with positive airway pressure, Plaintiff's condition was "significantly better[.]" (Tr. at 181.) Plaintiff was discharged eleven days after admission with a positive airway pressure unit for home use. (*Id.*)

Plaintiff participated in physical therapy in 1997 for leg pain and lumbar pyositis with probable L4 radiculopathy. (Tr. at 153-71.) When discharged from therapy, the prognosis for Plaintiff was "good." (Tr. at 163.) Plaintiff also participated in cardiac rehabilitation in 2001 and "tolerated exercise well." (Tr. at 239-71.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 16, 1992, through the date last insured of March 31, 1997. (Tr. at 16.) At step two, the ALJ found that Plaintiff's congestive heart failure and reported history of lower back pain with no medical record of treatment were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17.) At step four, the ALJ found that Plaintiff could not perform his previous work as an automobile assembly line worker or as a stock clerk. (Tr. at 21.) At step five, the ALJ concluded that Plaintiff was a younger individual on the alleged disability onset date and date last insured, that Plaintiff could have performed a limited range of sedentary work, and that he could perform jobs that exist in significant numbers in the national economy, such as information clerk, assembler, visual inspector, or reception clerk, with 22,400 such jobs in existence in Southeastern Michigan and 44,800 in the state. (Tr. at 22.)

### F.     Eligibility for Benefits

The ALJ determined that Plaintiff's eligibility for benefits ceased on March 31, 1997. In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when the plaintiff met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Mohr v. Bowen*, No. 87-1534, 1988 WL 35265, at \*2 (6th Cir. April 21, 1988). In this circuit, to qualify for social security disability benefits, disability must be proven to exist during the time the

plaintiff was insured within the meaning of the special insured status requirements of the Act; if the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). Thus, as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), however, the court held that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." *Id*. at 1354. Directly on point, the Sixth Circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

In this case, after review of Plaintiff's social security earnings' record, the ALJ concluded that Plaintiff's insured status ended on March 31, 1997. This was the last quarter in which Plaintiff had 20 quarters of coverage within a 40-quarter period. 20 C.F.R. § 404.130(b). The ALJ therefore ruled that only the evidence pertaining to Plaintiff's condition prior to March 31, 1997, could be considered in support of the disability benefits claim.

On the basis of the Social Security Act and *Estep*, which controls in this circuit, I conclude that the ALJ properly found that Plaintiff's insured status ceased as of March 31, 1997, and that, therefore, his refusal to consider later medical evidence was proper.

## G. Residual Functional Capacity

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 17.) Sedentary work involves lifting no more than ten pounds at a time and occasional lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.

## H. Analysis and Conclusion

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff first contends that Plaintiff should be considered "someone approaching advanced age under Social Security Rules and Regulations" because Plaintiff was 50 years old at the time

of the administrative hearing. (Dkt. 10 at 9.) However, it is the "claimant's age on the date last insured [which] generally governs." *Van Der Maas v. Comm'r of Social Security*, 198 Fed. App'x 521, 527 (6th Cir. 2006). Since Plaintiff was 40 years old on the date last insured, I suggest that the ALJ properly found that Plaintiff was a younger individual age 18-44. (Tr. at 21; 20 C.F.R. § 404.1563.) Therefore, this argument has no affect on the substantial evidence inquiry.

Plaintiff also argues that the ALJ erroneously stated that "claimant was diagnosed with sleep apnea and that C-PAP therapy eliminated obstructive respiratory events and maintained normal oxygen saturations." (Dkt. 10 at 14; Tr. at 19.) Plaintiff attempts to clarify that "Dr. Rowens merely recommends a C-PAP and notes that a pressure of 12 cmH2O eliminates obstructive respiratory events and maintains normal oxygen levels. Dr. Rowens, by no means, says that a C-PAP actually eliminated Plaintiff's obstructive respiratory events and that Plaintiff maintained normal oxygen levels as ALJ Wilenkin states." (Dkt. 10 at 14; Tr. at 19 (ALJ), 197 (Dr. Rowens).) I suggest that there is no substantive difference in the descriptions offered by Dr. Rowens and the ALJ. Neither maintain that Plaintiff's sleep apnea was cured or otherwise did not exist, they both simply recognize that, with C-PAP therapy, Plaintiff's sleep apnea symptoms were under control and oxygen levels were normalized. This argument does nothing to undermine substantial evidence.

The hypothetical asked the VE to consider a similarly situated person who could sit six hours and stand or walk two hours of an eight-hour day, perhaps lift as much as five pounds frequently and ten pounds occasionally, understanding that Plaintiff has shortness of breath and transient swelling, that these deficits did not interfere with performance of cognitive aspects, nor would the hypothetical individual have to lie down during the course of an ordinary day. (Tr. at 333-34.) I suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical

11

impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff also contends that the ALJ improperly ignored the VE's testimony in response to counsel's question regarding how Plaintiff's dizziness, shortness of breath and lightheadedness would affect his employability. (Dkt. 10 at 16; Tr. at 335.) Counsel's question to the VE was, "With that hypothetical in mind, if an individual is expected to miss up to two days a month due to complications from conditions such as dizziness, chest pains, shortness of breath, lightheadedness, would that individual be precluded from those jobs you mentioned?" (Tr. at 335.) The VE responded, "Not initially, but over the course of time after they've passed the time, that more then would be warranted by regular gainful employment activity, yes." (*Id.*) Plaintiff argues that the VE's response was an "affirmative" one. (Dkt. 10 at 16.) I suggest that the VE's answer indicates that the jobs described would be available "initially" and that his further explanation of the effects that might occur over time is ambiguous at best and does not undercut the VE's answer that a substantial number of jobs exist that Plaintiff could perform.

I further note that the ALJ properly and thoroughly considered each factor to be considered when evaluating Plaintiff's credibility regarding pain and in determining that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. at 17-19); C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. I further suggest that the ALJ's credibility determinations are supported by substantial evidence in light of the deferential standard applied to such determinations and the ALJ's ability

to give less weight to the testimony of interested witnesses. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is, on this record, supported by substantial evidence, and is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ <strong>Charles E Binder</strong>

CHARLES E. BINDER

Dated: December 4, 2008                United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Justen E. Grech, Derri T. Thomas, and the Commissioner of Social Security, and served on District Judge Victoria A. Roberts in the traditional manner.

Date:  December 4, 2008            By      s/Patricia T. Morris
                                   Law Clerk to Magistrate Judge Binder